ARTHUR PETROUSIAN, ESQ. (SBN 270358)
Email: *apetrousian@forthepeople.com*
MORGAN & MORGAN, LOS ANGELES, LLP
633 West Fifth Street, Suite 2200
Telephone: (213) 787-8590
Facsimile: (213) 418-3983

Attorney(s) for Defendant(s)
THEODOR VONKURNATOWSKI

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALEB L. MCGILLVARY,<br>Plaintiff(s),<br><br>vs.<br><br>THEODOR VONKURNATOWSKI,<br>Defendant(s) | Case No. 2:22-cv-8587-FLA-AGR<br><br>**DEFENDANT THEODOR VONKURNATOWSKI's NOTICE OF MOTION TO DISMISS PURSUANT TO *FRCP* 12(b)(6); MEMORANDUM OF POINTS & AUTHORITES IN SUPPORT THEREOF**<br><br>Hearing:<br>Date: March 31, 2023<br>Time: 1:30 p.m.<br>Place: Courtroom 6B<br>Judge: Hon. Fernando L. Aenlle-Rocha |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN THAT on March 31, 2023 at 1:30 p.m. before the Honorable Fernando L. Aenlle-Rocha, in Courtroom ## of the United States Courthouse for the Central District of California, First Street Courthouse, 350 W. 1st Street, Los Angeles, California, Defendant THEODOR VONKURNATOWSKI will and hereby does move the Court to dismiss this action pursuant to *Fed. R. Civ. P.* Rules 12(b)(6) and 12(b)(7). As set forth more fully below, grounds exist to support the Defendant's request to dismiss the matter.

Pursuant to Local Rule 7-3, Defendant states that Plaintiff CALEB L. MCGILLVARY is currently incarcerated in New Jersey State Prison in Trenton, New Jersey. Plaintiff has been incarcerated therein since his May 16, 2013 conviction for murder charges stemming from his killing of a 73 year old New Jersey attorney named Joseph Galfy. As such, Mr. McGillvary is unable to receive telephone calls or email and is only able to receive communicate via U.S. mail. On [DATE], counsel for the defendant VONKURNATOWSK sent a correspondence outlining Plaintiff's positions. The parties were unable to reach a resolution.

As set forth in the accompanying Memorandum of Points and Authorities, there is good cause for the relief requested. "A complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of affirmative defense, so long as the defense clearly appears on the fact of the complaint." *Quiller v. Barclays*

*American/Credity, Inc.*, 727 F.2d 1067 (11th Cir. 1984); *LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009) (to support dismissal under Rule 12(b)(6), the claim must be "facially subject to an affirmative defense.") Here, the Complaint is defective on its fact and cannot be amended to cure the defect.

This Motion is based on this Notice of Motion, the Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Arthur Petrousian, Defendants' Request for Judicial Notice, the Exhibits, the pleadings and papers filed in this action, and any such further argument and matters as may be offered at the time of the hearing of this Motion.

Dated: March 1st, 2023 MORGAN & MORGAN, LOS ANGELES, LLP

By: /s/ *Arthur M. Petrousian, Esq.*
ARTHUR M. PETROUSIAN
MORGAN & MORGAN, LA LLC
Attorney(s) for Defendant(s)
Theodore Vonkurnatowski

# TABLE OF CONTENTS

NOTICE ........................................................................................................1

TABLE OF CONTENTS........................................................................................4

TABLE OF AUTHORITIES ...................................................................................6

MEMORANDUM OF POINTS & AUTHORITIES ................................................9

I. OVERVIEW OF THE CASE................................................................................9

A. Introduction ..........................................................................................9

II. THE COMPLAINT SHOULD BE DISMISSED UNDER *FRCP* 12(b)(6) ..........................................................................................22

III. FEDERAL ACTION SHOULD BE DISMISSED .......................................22

A. APPLICABLE LAW RE: 12(b)(6) DISMISSAL................................24

IV. LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED ...........31

V. CONCLUSION...........................................................................................32

CERTIFICATE OF SERVICE ..............................................................................33

SERVICE LIST .....................................................................................................34

# TABLE OF AUTHORITIES

## Federal Cases

16th & K Hotel, LP v. Commonwealth Land Title Ins. Co.,
276 F.R.D. 8 (D.D.C. 2011) .......... 29

*Aetna Life Ins. Co. v. Haworth,*
300 U.S. 227 (1937) .......... 26

*Societe de Conditionnement v. Hunter Eng'g Co.*
655 F.2d 938 (9th Cir. 1981) .......... 26

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .......... 25

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .......... 25

*Boles v. Greeneville Housing Authority,*25
468 F.2d 476 (6th Cir. 1972) .......... 28

*Carrico v. City and Cty of San Francisco,*
656 F.3d 1002 (9th Cir. 2011) .......... 31

*Citizen Band Potawatomi Indian Tribe of Okla. v. Collier,*
17 F.3d 1292 (10th Cir. 1994) .......... 28

*Continental Baking Co. v. Woodring*
(1932) 286 U.S. 352 .......... 13

*English v. Seaboard Coast Line R.R. Co.,*
465 F.2d 43–48 (5th Cir. 1972) .......... 27

*Hendrick v. Maryland*
(1915) 235 U.S. 610 .......... 13

*Hodge Co. v. Cincinnati*
(1932) 284 U.S. 335 .......... 13

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.,*
826 F. Supp. 2d 1180 (C.D. Cal. 2011) .......... 29

*Interstate Busses Corp. v. Blodgett*
(1928) 276 U.S. 245 .......... 13

*Jamul Action Comm. v. Chaudhuri,*
200 F. Supp. 3d 1042 (E.D. Cal. 2016) .......... 28

*Kane v. New Jersey*
(1916) 242 U.S. 160 .......... 13

*Knappenberger v. City of Phoenix,*
566 F.3d 936 (9th Cir. 2009) .......... 31

*LeFrere v. Quezada*,
582 F.3d 1260 (11th Cir. 2009) .......... 2, 24
*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) (en banc) .......... 31
*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .......... 31
*Maryland Cas. Co. v. Pacific Coal & Oil Co.*,
312 U.S. 270 (1941) .......... 25, 26
*McShan v. Sherrill*,
283 F.2d 462 (9th Cir. 1960) .......... 28
*Meta v. Target Corp.*,
74 F. Supp. 3d 858 (N.D. Ohio 2015) .......... 29
*National Union Fire Ins. Co. of Pittsburg, PA v. ESI Ergonomic Solutions, LLC*,
342 F.Supp.2d 853 (D. Ariz. 2004) .......... 26
*Oquendo v. CCC Terek*,
111 F. Supp. 3d 389 (S.D.N.Y. 2015) .......... 28
*Pulitzer-Polster v. Pulitzer*,
784 F.2d 1305 (5th Cir. 1986) .......... 28
*Pyramid Lake Paiute Tribe v. Burwell*,
70 F. Supp. 3d 534 (D.D.C. 2014) .......... 29
*Quiller v. Barclays American/Credity, Inc.*,
727 F.2d 1067 (11th Cir. 1984) .......... 2, 24
*Ranger Ins. Co. v. United Hous. of New Mexico*,
488 F.2d 682 (5th Cir. 1974) .......... 28
*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) .......... 31
*Sprout v. South Bend*
(1928) 277 U.S. 163 .......... 13
*Stanley v. Darlington Cnty. Sch. Dist.*,
84 F.3d 707 (4th Cir. 1996) .......... 27
*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .......... 25
*Window Glass Cutters League of Am., AFL/CIO v. Am. St. Gobain Corp.*,
428 F.2d 353 (3d Cir. 1970) .......... 27

**Federal Statutes**

28 U.S.C. § 2201 .......... 25

**State Cases**

*Eli v. Murphy*
(1952) 39 Cal.2d 598 .......... 14, 15

*Gamboa v. Conti Trucking Inc.*
(1993) 19 Cal.App.4th 663 ........ 14
*Lehman v. Robertson Truck-A-Way*
(1953) 122 Cal.App.2d 82 ........ 14
*Millsap v. Federal Express Corp.*
(1991) 227 Cal.App.3d 425 ........ 13
*Morey v. Vannucci,*
64 Cal. App. 4th 904 (Ct. App. 1998) ........ 25
*Secci v. United Independent Taxi Drivers, Inc.*
8 Cal.App.5th 846 (2017) ........ 15
*Serna v. Pettey Leach Trucking, Inc.*
(2003) 110 Cal.App.4th 1475 ........ 14
*Taylor v. Oakland Scavenger Co.*
(1941) 17 Cal.2d. 594 ........ 14

**Rules**

Fed. R. Civ. P., Rule 10 ........ 25
Fed. R. Civ. P., Rule 12 ........ in passim
Fed. R. Civ. P., Rule 15 ........ 31
Fed. R. Civ. P., Rule 19 ........ in passim
Fed. R. Civ. P., Rule 56 ........ 29
Central District Local Rule 7-3 ........ 2

**Other**

Article III of the U.S. Constitution ........ 25, 26

# MEMORANDUM OF POINTS & AUTHORITIES

## I. OVERVIEW OF THE CASE

### A. INTRODUCTION

Plaintiff CALEB L. MCGILLVARY is currently incarcerated in New Jersey State Prison in Trenton, New Jersey. Plaintiff has been incarcerated therein since his May 16, 2013 conviction for murder charges stemming from his killing of a 73 year old veteran and New Jersey attorney named Joseph Galfy. A jury found him guilty of first-degree murder, and he was sentenced to 57 years in prison. He is to serve 85 percent of that term (roughly 43.5 years, after accounting for the five years of pre-trial confinement) before the possibility of parole, with the judge telling McGillvary, "when you become eligible for parole, you will still be younger than Mr. Galfy was when you murdered him". Galfy was 73 at the time of his death. The judge also stated during trial: ‘You are crafty, cunning, disingenuous and manipulative. You are a powder keg of explosive rage." (RJN: ). Plaintiff McGillvary appealed the conviction, alleging 15 instances of "misconduct, abuse of discretion, and ineffectiveness of defense counsel", but the murder conviction was upheld by the New Jersey Appellate Court in August 2021. Any assertions that Plaintiff is entitled to an equitable tolling of the statute of limitations because he is a “hero” who was acting in self-defense are moot. He has been repeatedly found to have been properly convicted for first-degree murder.

As is admitted in the moving papers, Plaintiff does not and cannot have any "rights" to the video clip in question as he was not the original publisher of the video clip. On page 2 of the complaint he clearly states that "Plaintiff thereafter gave an exclusive interview to KMPH FOX News." Mr. MCGILLVARY has no standing to bring any causes of action arising from Defendant pasting his own likeness over the face of Plaintiff on the video in question. Plaintiff does not own the video clip. Plaintiff fails to allege, nor can he, that he has a trademark, copyright or other such registration in either the clip or his likeness that is applicable to any of the rambling allegations made in his complaint. Being paid a "limousine full of marijuana" is not the same as filing for a trademark or copyright to "protect your brand." Furthermore, as Plaintiff admitted in the complaint, the video clip in question was edited and altered to be a satire of the original. Plaintiff, despite his violent actions that garnered his initial 15 minutes of fame, has continually sought to make himself a public figure, as outlined in his complaint. A recent Netflix documentary was released regarding the rise and fall of "Kai the Hatchet Wielding Hitchhiker." Given Plaintiff is famous for beating someone about the head with a machete and for murdering an attorney, it also cannot be said that Defendant posting a video meant as a joke on the internet is in any way diminishing Plaintiff's "brand." This entire lawsuit is baseless and the Court should grant this FRCP 12(b)(6) motion without giving Plaintiff leave to amend as it would be futile. He does not own the video in question. If anyone does, it is KMPH FOX who conducted the interview and broadcast it creating Plaintiff's "legendary folk hero" persona.

## II. THE COMPLAINT SHOULD BE DISMISSED UNDER *FRCP* 12(b)(6)

The Complaint is subject to a motion to dismiss under *FRCP* 12(b)(6) because it "fails to state a claim upon which relief can be granted". The Complaint "fails to state a cause of action", and it admits that it cannot do so by amendment.

### A. APPLICABLE LAW RE: 12(b)(6) DISMISSAL

"A complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of affirmative defense, so long as the defense clearly appears on the fact of the complaint." *Quiller v. Barclays American/Credity, Inc.*, 727 F.2d 1067 (11th Cir. 1984); *LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009) (to support dismissal under Rule 12(b)(6), the claim must be "facially subject to an affirmative defense.") When deciding a motion to dismiss, the court is bound by the facts pleaded in the complaint with a limited exception for exhibits that are attached to the complaint, exhibits incorporated by reference in the complaint, or matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); Fed. R. Civ. P. 10(c). Pursuant to *FRCP* 12(b)(6), a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although courts must accept all factual allegations as true on a Rule 12(b)(6) motion, legal conclusions are not entitled to the assumption of truth. *Id.*

**B. LANHAM ACT CLAIMS**

The false-advertising section of the Lanham Act (commonly known as Section 43(a)) provides as follows: Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 41 U.S.C. § 1125(a)(1).

The Lanham Act prohibits anyone, without prior consent from the trademark registrant, from using in commerce any "reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion . . . mistake, or to deceive." § 32(1)(a). It further prohibits reproduction, counterfeiting, copying, or imitating marks for reproduction in labels, signs, prints, packages, and so on,

provided they are intended to be used in commerce in connection with sales, distribution, or advertising, and provided there is a likelihood of confusion. § 32(1)(b).

In order to prove infringement against a third party under the Lanham Act a plaintiff needs to show that: (i) it owns a valid and protectable mark; (ii) the defendant has used a reproduction, counterfeit, copy or imitation of the mark in some kind of commerce without the plaintiff's consent; and (iii) the defendant's action is likely to cause confusion.

Although Plaintiff gives a lengthy and boastful outline of his life and the violence he has committed, he fails to state any facts which support a Cause of Action under the Lanham Act. Plaintiff has not and cannot plead he owns a valid and protectable mark. Furthermore, Defendant has a valid parody and First Amendment defense. In *Smith v. Wal-Mart Stores, Inc*. 537 F. Supp. 2d 1302, 1340 (N.D. Ga. 2008) a district court in Georgia held that Smith's products (T-shirts and other novelty products) accusing Wal-Mart of, inter alia, "Walocaust," and of being "Wal-Qaeda," were analogous to sandwich-boards historically worn by protestors, and were noncommercial, political speech subject to First Amendment protection (even though Mr. Smith sold his creations). The court addressed the protection the First Amendment affords to parody and concluded that tarnishment caused merely by an editorial or artistic parody which satirizes [the complainant's] product or its image is not actionable under an anti-dilution statute because of the free speech protections of the First Amendment." *Id.* at 1339 (quoting *Mattel, Inc. v. Walking Mountain Prods*., 353 F.3d 792, 812 (9th Cir. 2003)).

Similarly, in *Mattel, Inc. v. MCA Records, Inc.*, the Ninth Circuit held that cultural content is afforded protection in parodies, although the defendant had been selling its parody. Specifically, the court concluded that the "Barbie" doll is a cultural as well as a commercial symbol, and that Barbie could be a necessary component of artistic expression not merely a commercial symbol. *Mattel, Inc. v. MCA Records, Inc*. 296 F.3d 894, 906–07 (9th Cir. 2002) The case addressed a song called "Barbie Girl," by the band Aqua, which the manufacturer of Barbie (Mattel) claimed diluted its Barbie marks because of lyrics such as: "Life in plastic, it's fantastic. You can brush my hair, undress me everywhere." Mattel filed suit against the band's record company, MCA Records. Addressing the dilution claim, the court held for the defendant, noting: "[T]he song also lampoons the Barbie image and comments humorously on the cultural values Aqua claims she represents. Use of the Barbie mark in the song Barbie Girl therefore falls within the noncommercial use exemption to the FTDA. For precisely the same reasons, use of the mark in the song's title is also exempted." *Id*. at 901 (quoting AQUA, BARBIE GIRL (MCA Records 1997)).

Assuming that CALEB L. MCGILLVARY holds a valid trademark, which is not pled, he has actively, as stated in his complaint, cultivated "Kai the Machete Wielding Hitchhiker" persona as "cultural content." As such, he has opened up his antics to parody and jokes. Even from the exaggerated description of the video content contained in the Complaint, it is clear that Defendant was making a joke and attempting to be humorous. As such, leave to amend should be denied.

**C. FEDERAL COPYRIGHT CLAIMS**

To establish ownership of a valid copyright, a plaintiff must demonstrate that the work is original, and that it is subject to legal protection. Copyright law protects “original works of authorship” that exist—or could exist—in a “tangible medium of expression.” This includes books and other literary works, musical compositions, musical recordings, visual works like paintings or photographs, films and videos, and computer code. The U.S. Supreme Court has held that “[o]riginality is a constitutional requirement” in copyright law, and it “requires independent creation plus a modicum of creativity.” *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 346 (1991).

The elements of copyright infringement are: (1) ownership of a valid copyright and (2) unauthorized copying by the defendant of protected elements of the work. See *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003). "Copying may be established by showing that the infringer had access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (citing *Shaw v. Lindheim,* 919 F.2d 1353, 1356 (9th Cir. 1990)). In determining if two works are substantially similar, the Ninth Circuit's test contains both an extrinsic and an intrinsic component. *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006). When assessing substantial similarity as a matter of law, "courts apply only the extrinsic test." Id. "[T]he intrinsic test, which

examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury." Id.

Here, Plaintiff does not and cannot plausibly allege that he holds a valid copyright to the clip at issue. The Copyright Act protects "original works of authorship fixed in any tangible medium of expression" and copyright ownership in those works "vests initially in the author or authors of the work." 17 U.S.C. §§ 101-102(a). Works of authorship specifically include "pictorial [or] graphic works" which are defined to include "two-dimensional . . . works of fine, graphic, and applied art." 17 U.S.C. §§ 101-102(a)(5). As is admitted in the moving papers, Plaintiff does not and cannot have a copyright on the video clip in question as he was not the original publisher of the video clip. On page 2 of the complaint, he clearly states that "Plaintiff thereafter gave an exclusive interview to KMPH FOX News."

**D. FEDERAL CIVIL RICO**

The Plaintiff has failed to state a civil RICO claim for at least two reasons. First, Plaintiff has failed to adequately plead all of the elements of a civil RICO claim. The elements of a civil RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" *Maxwell v. Kaylor (*N.D.Cal. Mar. 22, 2021, No. 19-CV-07832-LHK) 2021 U.S.Dist.LEXIS 54995, at *12. The Plaintiff's complaint fails to make any

specific allegation that Defendant's conduct was an “enterprise,” was a “pattern” or caused injury to Plaintiff's "business or property."

Furthermore, Plaintiff does not state any acts that constitute “racketeering activity.” RICO defines "racketeering activity" as any of the predicate acts listed in 18 U.S.C. § 1961(1). (*Nationstar Mortg. LLC v. Presley* (E.D.Cal. Jan. 6, 2023, No. 1:20-cv-00620-JLT-CDB) 2023 U.S.Dist.LEXIS 3010, at *13.). 18 U.S.C. § 1961(1) states as follows:

> “racketeering activity” means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 932 (relating to straw purchasing), section 933 (relating to trafficking in firearms), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1351 (relating to fraud in foreign labor contracting), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461–1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use

of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581–1592 (relating to peonage, slavery, and trafficking in persons).,[1] sections 1831 and 1832 (relating to economic espionage and theft of trade secrets), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic),[2] sections 175–178 (relating to biological weapons), sections 229–229F (relating to chemical weapons), section 831 (relating to nuclear materials), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States),

> or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in section 2332b(g)(5)(B);

Nothing alleged in the complaint sets forth anything that could be construed as “racketeering activities.” Given the elements required to establish Civil RICO causes of action and the allegations alleged in the Complaint, it will be impossible for the complaint to be amended to state a viable claim for Civil RICO. As such, the complaint should be dismissed without leave to amend.

## E. CALIFORNIA RIGHT OF PUBLICITY

The elements of a right of publicity claim under California common law are: (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury. A statutory claim for right of publicity under Cal. Civ. Code § 3344 requires a plaintiff to prove all the elements of the common law cause of action plus a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose. *Upper Deck Co. v. Flores* (S.D.Cal. 2021) 569 F. Supp. 3d 1050, 1068.

Incidental use is a defense for right of publicity and commercial misappropriation claims. *Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1180 n.5 (9th Cir. 2015) ("Although California courts have not yet held that the incidental use defense applies to right-of-

publicity claims, the defense is widely recognized."). Incidental use of a plaintiff's name or likeness does not give rise to liability under a common law claim of commercial misappropriation or a claim under section 3344. *Aligo v. Time—Life Books, Inc.*, No. C 94-20707 JW, 1994 U.S. Dist. LEXIS 21559, 1994 WL 715605, at *2 (N.D. Cal. Dec. 19, 1994); see also 1 J. Thomas McCarthy, Rights of Publicity and Privacy § 6:31 (2d ed.2014) (citing "the general rule that an insignificant or fleeting use of plaintiff's identity is not an infringement"). "The rationale underlying this doctrine is that an incidental use has no commercial value, and allowing recovery to anyone briefly depicted or referred to would unduly burden expressive activity." *Pooley v. Nat. Hole—In—One Ass'n*, 89 F. Supp. 2d 1108, 1112 (D. Ariz. 2000); see also *Yeager v. Cingular Wireless, LLC*, 673 F. Supp. 2d 1089, 1100 (E.D. Cal. 2009).

The Ninth Circuit in applying the incidental use defense has considered factors of (1) whether the use has a unique quality or value that would result in commercial profit to the defendant, (2) whether the use contributes something of significance, (3) the relationship between the reference to the plaintiff and the purpose and subject of the work, and (4) the duration, prominence or repetition of the likeness relative to the rest of the publication. *Upper Deck Co. v. Flores* (S.D.Cal. 2021) 569 F. Supp. 3d 1050, 1069. Although it is "highly unusual for a court to dismiss a complaint on the basis that a defendant has proven an affirmative defense," " where the court can discern from the face of the pleadings that an affirmative defense applies as a matter of law, dismissal pursuant

to Rule 12(b)(6) may be appropriate." *Id.* citing *Designer Skin, LLC v. S & L Vitamins, Inc*., CV 05-3699, 2007 U.S. Dist. LEXIS 19506, 2007 WL 841471, at *2 (D. Ariz. March 19, 2007) and *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n. 1 (9th Cir. 1997).

Here, not only does Plaintiff fail to pled specific facts to support the elements of a Right of Publicity Claim, the complaint admits it was a "one off" video defendant made on one occasion that has allegedly been shared on maybe two other occasions to other entertainment pages. One video of a news video in which Plaintiff gave a public interview upon which Defendant, years later, superimposed his head on Plaintiff's head is incidental to the core. This is a case where it would be appropriate for the Court to dismiss the matter upon the affirmative defense.

Further, the complaint admits that Defendant transformed the original clip. The transformative use defense is a balancing test between the First Amendment and the right of publicity based on whether the work in question adds significant creative elements so as to be transformed into something more than a mere celebrity likeness or imitation. The California Supreme Court has explained that when a work contains significant transformative elements, it is not only especially worthy of First Amendment protection, but it is also less likely to interfere with the economic interest protected by the right of publicity. The court has rejected the wholesale importation of the copyright "fair use" defense into right-of-publicity claims, but has recognized that some aspects of that defense

are particularly pertinent. *Keller v. Elec. Arts Inc. (In re NCAA Student-Athlete Name & Likeness Licensing Litig.)* (9th Cir. 2013) 724 F.3d 1268, 1274.

Finally, the purpose of the Right to Publicity is essentially to protect Plaintiff economic interests. Plaintiff fails to explain how a one-off video is interfering with his economic intrests in particular as Plaintiff has interfered with his own economic interests by being convicted of first-degree murder of a 73 year old man. The rise and fall of “Kai the Hitchhiker” is well documented in numerous news articles as well as the recent Netflix Documentary following the life of Plaintiff from hitting someone on the head with a machete and giving a “funny” interview to being locked up in prison for the murder noted in Plaintiff’s complaint.

## IV. LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED

The leave to amend may be denied when “the court determines that the allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency.” *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend “is properly denied . . . if amendment would be futile.” *Carrico v. City and Cty of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). However, should a court dismiss certain claims, “[l]eave to amend should be granted unless the district court ‘determined that the pleading could not possibly be cured by the allegations of other facts.’” *Knappenberger v. City of Phoenix*, 566 F.3d 936 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)). Here, the Complaint fatally

pled facts which cannot be amended of corrected under the doctrine of (judicial estoppel), rendering it fatally defective under *FRCP* 12(b)(6). Accordingly, it is futile to permit an amendment.

**V. CONCLUSION**

For all the foregoing reasons, the Court should dismiss the Complaint pursuant to *FRCP* 12(b)(6)

Dated: March 1st, 2023 MORGAN & MORGAN, LOS ANGELES, LLP

By: /s/ *Arthur M. Petrousian, Esq.*
ARTHUR M. PETROUSIAN
MORGAN & MORGAN, LA LLC
Attorney(s) for Defendant(s)
Theodore Vonkurnatowski

## CERTIFICATE OF SERVICE

I, the undersigned declare that I am over the age of 18 years and not a party to the within action or proceeding. I am employed in and am a resident of Los Angeles County where the mailing occurs; and my business address is 633 West Fifth Street, Suite 2200, Los Angeles, CA 90071 ......................................................................................

On March 2ND , 2023, I caused to be served a true and correct copy of the foregoing document, **DEFENDANT THEODOR VONKURNATOWSKI's NOTICE OF MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6); MEMORANDUM OF POINTS & AUTHORITES IN SUPPORT THEREOF; [PROPOSED] ORDER**, on the interested parties in this action as follows: I served this document upon all appearing parties via Electronic Filing through the Court's electronic filing system based on a court order or an agreement of the parties to accept service by electronic transmission, and also at the electronic mail addresses listed below. Except for Plaintiff CALEB L. MCGILLVARY who is currently incarcerated in New Jersey State Prison in Trenton, New Jersey and was, therefore, served the moving papers via U.S. mail.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct. I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed on March 2ND , 2023, at Los Angeles, California.

/s/ *Arthur M. Petrousian, Esq*
ARTHUR M. PETROUSIAN

## SERVICE LIST

| | |
|---|---|
| Caleb L. McGillvary<br>SBI 000102317G<br>New Jersey State Prison<br>P.O. Box 861<br>Trenton, NJ 08625 | *PRO SE PLAINTIFF* |