FILED
CLERK, U.S. DISTRICT COURT

02/24/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ TF _____ DEPUTY

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CALEB L. MCGILLVARY | ) | CIVIL ACTION NO. |
| PLAINTIFF | ) | 2:22-cv-08587-FLA-AGR |
| | ) | Hon. Fernando L. Aenlle-Rocha, |
| V. | ) | U.S.D.J. |
| | ) | |
| THEODOR | ) | |
| VONKURNATOWSKI | ) | |
| DEFENDANT | ) | |

## FIRST AMENDED COMPLAINT

## PLAINTIFF REQUESTS A JURY TRIAL

## I. PARTIES IN THIS COMPLAINT
## A. PLAINTIFF (*PRO SE PLAINTIFF IS INCARCERATED*)
NAME: Caleb L. McGillvary
STREET ADDRESS: #1222665/SBI#102317G NJSP Po Box 861
COUNTY, CITY: Mercer, Trenton
STATE & ZIP CODE: New Jersey 08625
TELEPHONE NUMBER: N/A

## B. DEFENDANT
NAME: Theodor VonKurnatowski
STREET ADDRESS: 401 South Barrington Ave
COUNTY, CITY: Los Angeles, Los Angeles
STATE & ZIP CODE: California 90049
TELEPHONE NUMBER: _____

## II. BASIS FOR JURSIDICTION
This Court has jurisdiction under 28 U.S.C. 1331 over plaintiff's claims under 15 U.S.C. 1125, 18 U.S.C. 1964, and 18 U.S.C. 2318(e).

This Court has jurisdiction under 28 U.S.C. 1332 and 28 U.S.C. 1367 over plaintiff's state law claims. Plaintiff is a resident of New Jersey and Defendant is a citizen of California. The amount in controversy exceeds $75,000.

## III. STATEMENT OF CLAIM

A. The events giving rise to these claims occurred at Theodor VonKurnatowski's place of residence and/or YouTube channel in or around Los Angeles, California

B. These claims accrued on August 12, 2022 by equitable tolling under the "Discovery Rule" Doctrine

C. The facts giving rise to these claims are as follows:

### INTRODUCTION

1.) Plaintiff Caleb L. McGillvary ("Plaintiff") immigrated to America from Canada in 2012. He has never been convicted of any crime in Canada. On February 1, 2013, in Fresno, CA, Plaintiff used his camping hatchet to heroically save a crowd of people from a violent white supremacist; who was trying to kill them all. Plaintiff immediately thereafter gave an exclusive interview to KMPH FOX News. The video of this interview went viral, and plaintiff became widely known as "Kai the Hatchet Wielding Hitchhiker"; a legendary folk hero. Plaintiff subsequently appeared under this widely recognized mark on Jimmy Kimmel Live!, EBaumsworld, and the Gregory Brothers. Plaintiff, who

was a homeless street musician at the time, also enjoyed a multitude of fans who invited him to stay with them at their homes.

Unfortunately, on May 12, 2013, a well-connected lawyer from the judicially-noticeable white supremacist hotspot of Clark, NJ; drugged Plaintiff's drink and sexually assaulted Plaintiff. Plaintiff awoke during the assault and defended himself; not realizing that the rapist died until Plaintiff was arrested on May 16, 2013, and charged with murder.

Plaintiff was convicted on April 24, 2019; because of what a federal judge recently held to be a "sufficiently alleged conspiracy"; between Plaintiff's defense counsel, the prosecutor, and the rapist's family: "to deprive Plaintiff of his Due Process Rights." McGillvary v. Galfy 2:21-cv-17121-MCA-CLW, ECF P.9 (DNJ July 28, 2022); See also McGillvary v. Davis 2:22-cv-04185-MCA (DNJ June 22, 2022).

Despite that murder conviction, Plaintiff still enjoys massive esteem, respect, goodwill, and confidence from the millions of people who recognize him for his heroic actions on February 1, 2013.

2.) On or about October 1, 2021, Defendant Theodor VonKurnatowski ("Defendant"); published a video on his "daughter account" YouTube channel, "Brian Monarch": in which he superimposed his face onto

Plaintiff's February 1, 2013 performance; much like sticking a Pepsi label onto a distinctive Coca-Cola bottle. Plaintiff's distinctive voice, body, and garb is clearly displayed in its original form, with Defendant's face exactly copying Plaintiff's entire performance; word for word and expression for expression. Defendant appears to introduce himself as Plaintiff and claim credit for all of Plaintiff's heroic actions. Like an impostor wearing a Marine's medal of honor, Defendant appears to describe freeing a hostage from a homicidal lunatic's grasp, saving a crowd of people from being killed, and protecting a woman against a man who attempted to beat her to death in an orchard. Defendant did not alter Plaintiff's performance, body appearance, expressions, or voice; except to knowingly and maliciously plagiarize Plaintiff and assume his identity through imposture. The video on YouTube received 118,000 views to date. The video on YouTube is annexed hereto from its URL: https://youtu.be/o4CCVEwks3c

3.) On or about March 6, 2022 Defendant republished the video on Instagram. It has received 1,700,000 views on Instagram to date. The video on Instagram is annexed hereto from its URL: https://instagram.com/p/CaqLPeRDhp-/

4.) On or about June 13, 2022 Defendant republished the video on TikTok. It has received 1,200,000 views on TikTok to date. The video on Instagram is annexed hereto from its URL: https://tiktok.com/@TheoVon/Video/7108847165212020014?is_copy_url=1&is_from_webapp=v1&lang=en

5.) A "Mother-Daughter Account" is an enterprise in which an individual and/or his cohorts fraudulently create multiple accounts called "daughter accounts"; whose sole purpose is to create content and engagement that drives up traffic to the "mother account."

6.) Defendant knowingly and maliciously used Plaintiff's image as a thumbnail; and Plaintiff's distinguishing devices and distinctive marks, "Kai the Hitchhiker"; "Kai the Hatchet Wielding Hitchhiker"; and "The Hatchet Wielding Hitchhiker"; to advertise the Video on YouTube, Instagram, and TikTok; and to advertise his YouTube, Instagram, and TikTok channels; without Plaintiff's consent. A screenshot of these advertisements is attached hereto at "Exhibit A."

8.) On August 13, 2022, Plaintiff sent a letter to Defendant via email, requesting Defendant to permanently remove and cease broadcasting the Video. The letter specifically stated:

5

"Mr. Von;

It has recently come to my attention that you have republished a video of me; but with your face superimposed over mine. I am told that you've published this video on Instagram and TikTok.

This is to notify you that any such republished videos are in violation of my right of publicity. California Civil Code Section 3344 provides that I have a right to recover the gross revenue from your unauthorized monetization of my voice and likeness. I urge you to consider the legal ramifications of a similar situation:

How do you think Marvel would legally respond if you edited your face onto Spiderman and republished the movie "Spiderman" on your channel, monetized?

Additionally, your aforementioned videos are infringing on my copyright in my performance of the interview contained therein. Strikes under the Digital Millennium Copyright Act could affect your ability to monetize videos in the future.

I hereby request that you remove any such offending videos from all platforms; that you turn over all of the monetization revenue therefrom, which I am entitled to under Cal. Civ. Code 3344, to a fundraiser of my choosing; and that you kindly refrain from violating my right of publicity in the future.

I would prefer to resolve this quickly and amicably.

Very Truly,

/s/

Caleb L. McGillvary

a/k/a "Kai the Hitchhiker"

Date: 8/13/22"

## Lanham Act Claims

9.) Plaintiff is and has been actively searching for opportunities to commercialize his identity, image, and marks; through licensing his marks to film production companies, and through monetizing his YouTube channel and social media platform. Plaintiff is currently

6

licensing use of his voice, name, and likeness to YouTubers "The Gregory Bros." and "Wavy Web Surf" under quality-controlled license agreements.

10.) In February of 2013, Plaintiff quality-control licensed his name, voice, and likeness to Jimmy Kimmel Live! for a single episode; in consideration for a limousine full of marijuana, and an all-expense-paid vacation to Los Angeles in said limousine with a surfboard and wetsuit. The value of the consideration was in excess of $14,000. Plaintiff personally visited the site of production and decided what to say "ON AIR"; thereby quality-controlling the product.

11.) In February of 2013, Plaintiff granted "The Gregory Bros." a quality-controlled license to use his name, voice, and likeness to market their auto-tuned song on YouTube and iTunes; at which point the plaintiff agreed to visit and inspect the site of production. In April of 2013, at the soonest practicable time pursuant to this agreement, Plaintiff inspected the site of production in Williamsburg, NY; and ascertained that the product was manufactured with superb quality. Plaintiff routinely inspects the product on YouTube and iTunes, only to discover that its original excellent quality remains unchanged. Plaintiff

has received and continues to receive licensing fees from the use of his marks; since the moment of initial production to the present; and will continue to do so for the foreseeable future. This has benefitted plaintiff approximately $14,000 so far.

12.) In October of 2018, Plaintiff entered into a quality-controlled license of his name, voice, and likeness and marks with "Wavy Web Surf"; to market his YouTube channel. In lieu of inspecting the site of production, due to impossibility because of plaintiff's incarceration, plaintiff inspected the script of the video and approved it for production. In consideration of this, Wavy Web Surf paid plaintiff the sum of $2,700 and included advertisement of a link to plaintiff's token crowdfunding platform; which raised approximately $11,300 therefrom to date.

13.) Plaintiff also has a YouTube channel, an Instagram Account, and a TikTok account; which are all and each in direct competition with Defendant's, for the same type of product and customers.

14.) From the facts pleaded in "10", "11", and "12" above; the fair market value of plaintiff's endorsement of a video with his name, voice, or likeness or marks; is currently $14,000 per published video.

15.) Plaintiff is famous and widely recognized for his name, voice, likeness, and unregistered marks "Kai the Hitchhiker"; "Kai the Hatchet Wielding Hitchhiker"; "The Hatchet Wielding Hitchhiker"; and "Smash, Smash, Smash!"; and for his distinguishing devices of hairstyle, garb, performance, and body appearance in the February 1, 2013 interview.

16.) Defendant has deprived plaintiff of the fair market value of an endorsement worth $14,000; each time defendant has published the Video.

17.) Defendant has unjustly enriched himself using plaintiff's name, voice, likeness, and marks to advertise his monetized video and channel; thereby acquiring direct proceeds through monetization; and indirect proceeds through the lifetime value of new subscribers; produced by said advertisements, on his YouTube, Instagram, and TikTok channels. Defendant falsely advertises that by clicking his video, viewers will be directed to a product of Kai the Hatchet Wielding Hitchhiker; which specifically refers to Plaintiff.

18.) Defendant's subscribers on his "Mother Account" YouTube Channel "Theo Von" increased from 632,000 in May of 2020 to 1,200,000 at the

time of writing. This increase of approximately 149% resulted from Defendant's use of plaintiff's performance, name, voice, likeness, and marks to advertise his video and channel for the purpose of gaining subscribers.

19.) Defendant also had a commensurate increase in subscribers or followers to his TikTok and Instagram accounts. This increase resulted from Defendant's use of plaintiff's performance, name, voice, likeness, and marks to advertise his video and channel for the purpose of gaining subscribers.

20.) The lifetime value of each of defendant's YouTube subscribers is calculated by the following formula:

[[(Channel total video views per year)/(Average number of subscribers per year)]/[(Average number of subscribers per 1000 views)/1000]]x[(California average life expectancy)-(Defendant's age in years at time of publishing)]x(monetization rate)]= Subscriber Lifetime Value

21.) The lifetime value of each of defendant's Instagram and TikTok subscribers is calculated with the same formula as "20"

22.) Defendant is part of a monetization partnership with YouTube and/or Google AdSense; in which defendant is paid approximately an estimated $3.40 per 1000 video views on each of his monetized videos. This money is generated from advertising, whereby third parties purchase ads which are played before, during, and after videos; which are broadcast to citizens of all 50 states and internationally. Each of these third parties pay YouTube and/or Google from their home state; who in turn apportion defendant an amount of revenue from every thousand of these transactions. This amount is transferred from YouTube and/or Google to defendant's bank account; from which he invests the proceeds in real estate, personalty, and/or other enterprises. These transactions involve federally insured banks and affect interstate commerce.

23.) Defendant has a similar partnership to that described in "22" with Instagram

24.) Defendant has a similar partnership to that described in "22" with TikTok

25.) According to socialblade, defendant's YouTube channel has 182,725,133 total video views over the past 16 years; or about an

average of 11,300,000 per year. With an average of about 75,000 subscribers, this makes for an average of 151 views per subscriber per year; at an estimated average rate of $3.40 per 1000 views. California's average life expectancy is believed to be 74 years, and Defendant looks about 40; so the estimated lifetime value of defendant's 568,000 new subscribers, resulting from his conduct pleaded in "17" and "18" above and elsewhere in this complaint, is $9,914,780.80.

26.) Defendant's TikTok subscriber increase resulted in a commensurate lifetime value to that pleaded in "25"; an estimated $9,914,780.80

27.) Defendant's Instagram subscriber increase resulted in a commensurate lifetime value to that pleaded in "25"; an estimated $9,914,780.80

### Federal Criminal Copyright Claims

28.) Defendant illegally copied an entire copyright-protected performance and KMPH FOX News interview video of plaintiff; then affixed his own face as a counterfeit label to this video, and advertisements therefor, for the purpose of marketing and trafficking copies of it in interstate commerce. Defendant never received

permission form the copyright owners to use the images. His conduct is in violation of 18 U.S.C. 2318, 2319, and/or 2320. Plaintiff has a right to bring civil action against defendant under 18 U.S.C. 2318(e)

29.) Plaintiff was a travelling troubadour and street performer, who earned his living by busking, at the time of his February 1, 2013 interview. Plaintiff created his performance in said interview; and thereafter re-created his performance for adoring fans while busking; receiving generous compensation therefor in the form of paid vacations, cash, and tangible assets. Plaintiff owns the copyright to his performance in the video, and any images extracted therefrom. KMPH FOX News has registered the copyright to the motion picture of Plaintiff's February 1, 2013 performance; although Plaintiff is the director and author thereof, and ownership vested in him; and so KMPH FOX News holds the legal title in constructive trust for Plaintiff, who is the beneficial owner of the registered copyright; and thus has standing to sue for infringement under 17 USC 411, 501 et seq.

30.) Plaintiff repleads "22" as showing an enterprise

31.) Defendant copied an image of plaintiff's copyrighted performance from the video of the February 1, 2013 interview without authorization;

and used the infringing image as a counterfeit label to advertise and sell his audiovisual works in interstate and foreign commerce for the purpose of monetization of his videos and for selling ads in interstate and foreign commerce, knowingly and with malice.

32.) Defendant copied Plaintiff's copyright protected performance from the video of the February 1, 2013 interview without authorization; and used infringing images as counterfeit labels, and affixed counterfeit marks to Plaintiff's performance, to advertise and sell his audiovisual works in interstate and foreign commerce for the purpose of monetization of his videos and for selling ads in interstate and foreign commerce, knowingly and with malice.

## Federal Civil RICO

## Federal Criminal Copyright

33.) Plaintiff repleads "28"-"32"

## Wire Fraud

34.) Defendant fraudulently represented, through transmission by wire, to TikTok, Instagram, and YouTube that his videos were in compliance

with TikTok, Instagram, and YouTube's terms of service/terms of use; by several clickwrap agreements.

35.) Defendant knew the falsity of the his misrepresentation in "34" at the time it was made; because unauthorized reproduction of, or creation of derivative works from, the copyright protected motion picture, underlying sound recording, and/or underlying dramatic work; is a violation of TikTok, Instagram, and YouTube's terms of service and/or terms of use; as is also the fraudulent creation of multiple accounts by the same user, in the context of "mother-daughter accounts."

36.) Defendant intended to defraud TikTok, Instagram, and YouTube of a portion of the monetization revenue from each and every viewer and/or engager and/or subscriber resulting from the clickwrap agreements.

37.) TikTok, Instagram, and YouTube justifiably relied upon Defendant's misrepresentations in "34" to its legal detriment in pursuing advertisements and contracts with advertisers, who also justifiably relied upon said misrepresentations, on said videos; to pay defendant through transmission by wire and/or a federally insured bank for the illegal re-publication of Plaintiff's Copyright-protected works;

and for the unauthorized reproduction of the copyright-protected motion picture and underlying sound recording and dramatic works; and for the creation and publication of unauthorized derivative works therefrom.

38.) Plaintiff was harmed by the Defendant's actions as pleaded in "16"- "27" and "28"-"37"; in the manner of injuring Plaintiff's business- and property-interests in fees for endorsements and use of his works, and by unjust enrichment of Defendant by depriving Plaintiff of his property interest in moneys from revenues for his works and derivative works therefrom, at Plaintiff's detriment; and by loss of employment from advertising, endorsement, or other business or property interests because of the impression created by Defendant in interstate commerce that Plaintiff's marks and works can be used without compensation.

39.) Plaintiff repleads "34"-"38" as wire fraud under 18 U.S.C. 1343 and/or bank fraud under 18 U.S.C. 1346 and/or money laundering under 18 U.S.C. 1956.

18 USC 1957

40.) Plaintiff avers that each transfer of moneys received by Defendant pursuant to the Partnerships in "22"-"24" involved the property of the

motion picture work described in " 2 "-" 4 " which was derived from the violations of 18 USC 2318 and/or 18 USC 1343 pleaded in " 28 "-" 39 "; and were each and all acts in violation of 18 USC 1957. Plaintiff was deprived of, and Defendant was unjustly enriched by, these moneys, which represent Plaintiff's property interest in revenues from derivative works based on his copyright protected dramatic work and motion picture work.

18 USC 1964

41.) Plaintiff repleads " 16 "-" 27 " and " 28 "-" 40 " as showing that Defendant is a person who has formed an enterprise ("TV") with his YouTube, Instagram, and TikTok monetization partnerships, in which he creates and uploads and publishes motion picture works derivative of copyright protected works without authorization, fraudulently in violation of terms of service and making knowingly false misrepresentations to said platforms that he has the full rights to said motion picture works via clickwrap agreements intending to induce reliance thereon; and therefor receives transfers of money in interstate commerce for advertisement revenues attendant thereon.

42.) Defendant engaged in conduct in furtherance of the enterprise "TV" described in "41" by violation of the statutes in "28", "39" and "40", and theft by fraud of advertisers by using false advertising, which forms the pattern of racketeering activity; with the three publishings of the video and each transaction described in "40" each constituting a predicate act; as defined by 18 U.S.C. 1961 and prohibited by 18 USC 1962(c). Defendant himself forms the person and principle; his YouTube, TikTok, and Instagram channels and monetization partnerships form the enterprise; and his investment in maintaining and controlling his Youtube, TikTok, Instagram, and/or Google accounts, financial accounts, business entities, and personal and real properties with the proceeds from his racketeering activities; form the "prohibited activities" as defined by 18 U.S.C. 1962(b). Defendant's receipt of moneys from the monetization partnerships described in "22"-"24" for his racketeering activity described in "28"-"40" form the "prohibited activities as defined by 18 USC 1962(a). Defendant has caused Plaintiff concrete financial loss by depriving him of revenues to his copyright protected dramatic work and motion picture work, and of fees for endorsement, through conduct described in "28"-"40" and in

this paragraph, in furtherance of the enterprise "TV". The racketeering activity is likely to recur, as Defendant has shown by repeating his pattern of wire fraud to YouTube with TikTok and Instagram; and by continuing to receive monetary transactions involving criminally-derived property as described in "40". A continuity exists with the threat of further platforms becoming vehicles of Defendant's fraud and transactions involving criminally-derived property; or of similar future frauds and transactions being perpetrated by Defendant on these same platforms. Defendant is therefore liable to Plaintiff for treble damages under 18 U.S.C. 1964.

## California Right Of Publicity

43.) Plaintiff repleads "1","10"-"12", and "14" as establishing the commercial value of his name, voice, and likeness.

44.) Plaintiff repleads "2","3","4","6"," 8 "," 17 ", and "22"; as establishing non-consensual, unauthorized commercial use of plaintiff's name, voice, and likeness by defendant.

45.) Defendant inaccurately claimed endorsement by recognition of plaintiff's name, voice, and likeness throughout the Video; and through an imposture of Plaintiff's distinctive performance; and by innuendo

46.) Defendant knowingly and maliciously inaccurately claimed endorsement explicitly by appearing to introduce himself as Plaintiff

47.) Plaintiff specifically asserts that defendants claims, actions, and statements in "2"-"4" and "43"-"46" above; knowingly and with malice misrepresented plaintiff's persona; and that defendant did not add any comment, news reporting, educational content, or sufficient transformative artistic expression to render his use anything but blatant plagiarism and identity theft.

48.) Defendant's video has caused loss of revenue from licensing of plaintiff's name, voice, and likeness and marks. It has deprived Plaintiff of his personality's endorsement value; which had been consistently earning him $14,000 per endorsement; and is so actuated by Defendant's fraud as pleaded in "34"-"39" so as to warrant punitive damages. Plaintiff is entitled to  gross revenues under Cal Civ Code 3344, which plaintiff repleads as being shown by "16"-"21"; and "25"-"27".

## Catch-All Clause

49.) If any paragraph of this complaint pleaded as an element of one claim substantiates or bolsters any other claim; then plaintiff adopts it

by reference and repleads that paragraph in support of each claim it substantiates or bolsters.

## Equitable Tolling

50.) Plaintiff is incarcerated in New Jersey for something which isn't a crime under California law: defending himself against a sex assault. See McGillvary v. Davis 2:22-cv-04185-MCA (DNJ June 22, 2022)(New Jersey's confinement of plaintiff is unconstitutional); McGillvary v. Galfy 2:21-cv-17121-MCA-CLW (July 28, 2022)(Holding that plaintiff sufficiently alleged a conspiracy between his defense counsel, the prosecutor, and the family of the rapist alleged to be a victim; to deprive plaintiff of his Due Process Rights). The People of California have already exonerated, and expressed their approval for the use of, Plaintiff's use of lethal force in defense of another. See People v. McBride F068949 (Cal. Ct. App. Jan 27, 2016). Plaintiff's incarceration has caused him to be unable to access the internet. For this reason, Plaintiff only discovered the video through serendipity on August 12, 2022; when a concerned friend alerted him to its existence. He could not have discovered it before this date through due diligence; for the same reason that you can't find a needle in a haystack, if you don't know

there's a needle to look for in the first place. Defendant took advantage of Plaintiff's confinement by knowingly and maliciously failing to provide any notice to Plaintiff of Defendant's use of Plaintiff's performance, voice, name, and likeness. Equitable principles militate against allowing Defendant to benefit from his wrongdoing in failing to provide notice: especially given the judicially noticeable public knowledge of Plaintiff's confinement and inability to discover evidence of the video through any means available to him.

## IV. PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully prays that this Court enter judgment:

51.) Granting Plaintiff a declaration that the acts of defendant described herein are unlawful and tortious;

52.) A preliminary and permanent injunction ordering Defendant to remove the Video from broadcast; and to cease using Plaintiff's marks, image, or likeness to market Defendant's products; on all platforms;

53.) Granting plaintiff restitution and/or compensatory damages in the amount of $29,744,342.40 against Defendant;

54.) Plaintiff also seeks statutory damages under 18 U.S.C. 2318(e)(3) or 18 U.S.C. 2318(e)(4), whichever is greater;

55.) Plaintiff also seeks nominal damages and punitive damages in the amount provided for by State or Federal statutes or law, whichever is greater;

56.) Plaintiff seeks that all damages heretofore requested be trebled pursuant to 18 U.S.C. 1964

57.) Plaintiff also asks for any other relief this court deems just, proper, and equitable.

I declare under penalty of perjury that all the documents attached hereto are true and accurate copies of the originals.

I declare under penalty of perjury pursuant to 28 U.S.C. 1746 that the foregoing statements are true and accurate to the best of my knowledge and belief.

Executed this 17TH Day of FEBRUARY , 2023

Respectfully Submitted,

Caleb L. McGillvary, Pro se
#1222665/SBI#102317G NJSP
Po Box 861 Trenton, NJ 08625-0861

# CERTIFICATION OF PRO SE LITIGANT

I, Caleb L. McGillvary, hereby certify that I am representing myself in this action. I certify this petition is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

DATE: 2/17/23

_____
Caleb L. McGillvary

EXHIBIT A









# PROOF OF SERVICE

I, CALEB L. MCGILLVARY, HEREBY DECLARE PURSUANT TO 28 USC 1746 THAT ON TODAY'S DATE, I HAVE PLACED IN THE HANDS OF CORRECTIONAL OFFICERS HERE AT NEW JERSEY STATE PRISON; THIRD & FEDERAL STREETS TRENTON, NJ 08625 WHERE I'M INCARCERATED; WITH FIRST CLASS POSTAGE PREPAID TO BE SENT VIA USPS REGULAR MAIL; THE ORIGINAL & 3 COPIES TO THE CLERK FOR FILING AT US. DISTRICT COURT - CENTRAL DISTRICT OF CALIFORNIA 255 E. TEMPLE ST. LOS ANGELES, CA 90012; & A COPY TO THEODOR VONKURNATOWSKI FOR SERVICE AT 4405 LEALAND AVE NASHVILLE, TN 37204; OF MY FIRST AMENDED COMPLAINT, ONCE AS A MATTER OF COURSE. I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE & ACCURATE. EXECUTED THIS 17TH DAY OF FEBRUARY , 2023

CALEB L. MCGILLVARY, PRO SE
#1222665/SBI# 102317G NJSP
Po Box 861 TRENTON, NJ 08625



CLERK
U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
255 E. TEMPLE ST. RM 180
LOS ANGELES, CA
900.12

LEGAL MAIL

